IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIHAD RASHID, ) | |
| Petitioner, ) | C.A. No. 08-107 Erie |
| ) | |
| v. ) | Magistrate Judge Baxter |
| ) | |
| FRANCISCO J. QUINTANA, ) | |
| Warden, FCI McKean, ) | |
| Respondent. ) | |

**OPINION AND ORDER**[1]

**I.     Introduction**

Petitioner Jihad Rashid, a/k/a Richard Ordell Johnson, is a federal prisoner who is currently incarcerated at the Federal Correctional Institution, McKean ("FCI McKean"), located in Bradford, Pennsylvania. He is serving a 139-month term of imprisonment imposed on October 23, 2000, by the United States District Court for the Eastern District of Michigan. Petitioner's full term will expire on May 22, 2012, and his projected release date is November 24, 2010, assuming he receives all good conduct time available. He has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 4] in which he disputes the Bureau of Prisons' (the "BOP's") computation of his federal sentence. For the reasons set forth below, the Petition is denied.

**A.     Background**[2]

In May 1999, local police from the area around Detroit, Michigan, in conjunction with the multi-jurisdictional Violent Crimes Task Force and the FBI, identified Petitioner as a suspect in several armed robberies. When on May 25, 1999, the Great Lakes National Bank was robbed, Petitioner became a suspect in that crime as well. That night, at around 11:55 p.m., officers of the Detroit Police Department observed Petitioner leaving a hotel. He was arrested and taken into state custody. The state charged him with three robberies occurring on May 11, 23, and 24, 1999. (See

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] This discussion contains citations to the BOP's Program Statements, which are available on the BOP's website at www.bop.gov.

1

¶¶ 5-6 of Declaration of Cheryl A. Pauley ("Pauley Decl."), Ex. 1 to *Response* [Docket No. 11]; see also ¶¶ 5-6 of Declaration of James E. Hazelton ("Hazelton Decl."), and ¶ 4 of the Second Declaration of Vanessa Herbin-Smith ("Second Herbin-Smith Decl."), attached as Exs. 1 and 2, respectively, to the *Surreply* [Docket No. 16]; see also Preliminary Complaint Record, Ex. A to *Petition*).

The federal government prosecuted Petitioner for the May 25, 1999, bank robbery. Less than a month after that robbery, on June 22, 1999, a criminal complaint was filed against him in the United States District Court for the Eastern District of Michigan, charging him with one count of Bank Robbery with Force and Violence, in violation of 18 U.S.C. § 2113(a). (Pauley Decl. ¶ 5.1). On that same date, a warrant for Petitioner's arrest was lodged on that court's docket sheet. (See Second Herbin-Smith Decl. ¶ 6).

With the May 25, 1999 arrest, the State of Michigan obtained primary custody of Petitioner. The primary custody doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual that has violated each sovereign's laws. See Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F.Supp. at 622 (citations omitted).[3]

---

[3] Petitioner contends that the federal government had primary custody over him, but the BOP has determined that it did not. There is no basis for this Court to disturb the BOP's determination and Petitioner has no standing to

(continued...)

On June 29, 1999, the United States Attorney for the Eastern District of Michigan filed a petition for writ of habeas corpus *ad prosequendum* seeking temporary custody of Petitioner for processing of the federal criminal charge.[4] (Hazelton Decl. ¶ 5; see also ¶ 3 of First Declaration of Vanessa Herbin-Smith (hereinafter "First Herbin-Smith Decl."), Ex. 1 to the *Response*). On July 12, 1999, federal authorities obtained temporary custody of Petitioner pursuant to the writ. (Pauley Decl. ¶ 6(f)).

On December 21, 1999, Petitioner pleaded guilty in United States District Court for the Eastern District of Michigan to the bank robbery charge. (Id. ¶ 6(g)). On October 23, 2000, the federal district court sentenced him to a 151-month term of imprisonment with a 3-year term of supervised release to follow. The district court's sentencing order was silent as to whether the federal sentence was to run concurrent with any other sentence. (Id. ¶ 6(h)-(i); Federal Judgment and Commitment Order, Ex. 2b to *Response)*.

On October 26, 2000, the United States Marshals Service returned Petitioner to state authorities in satisfaction of the writ of habeas corpus *ad prosequendum* and a federal detainer was lodged against him at the Wayne County Jail. (Id. ¶6 (j)). On that same day, Petitioner appeared

---

[3](...continued)
challenge it. Bowman, 672 F.2d at 1153-54 (quoting Derengowski v. United States Marshal, 377 F.2d 223, 224 (8th Cir. 1967) for the proposition that: "'[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.' He has no standing to raise the issue.")).

Moreover, the BOP's primary custody determination is not relevant for the purpose of evaluating whether Petitioner is entitled to habeas relief. That is because, as explained below, the issue of primary custody pertains to the date upon which the BOP will determine that a federal sentence has commenced pursuant to 18 U.S.C. § 3585(a). See BOP Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28", Chapt. 1 at Pages 11-13, 31-33. If a prisoner is in the primary custody of the federal government on the date his federal sentence is imposed, the BOP will calculate his federal sentence as having commenced on that date. PS 5880.28, Chapt. 1 at Pages 12-13. In this case, the BOP granted Petitioner a *nunc pro tunc* designation under 18 U.S.C. § 3621(b) and it calculated his federal sentence as having commenced pursuant to § 3585(a) on the date it was imposed. Thus, Petitioner's sentence-commencement date has been calculated the same as it would have been had he been in the primary custody of the federal government on the date his federal sentence was imposed.

[4] A prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* is considered to remain in the primary custody of the sending sovereign unless and until that sovereign relinquishes jurisdiction over the person. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002). The sending sovereign retains primary custody and the receiving sovereign (in this case, the federal government) is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. Id.

before the state court and entered guilty pleas on the three armed robbery criminal charges that were pending against him. (Id. ¶ 6(k)).

On November 14, 2000, the state court sentenced Petitioner to three concurrent state sentences of 5-20 years, with 538 days jail credit for the time he served in official detention prior to the imposition of his state sentences (that is, from May 25, 1999 (the date of his arrest), through November 13, 2000) (the date before his state sentences were deemed to have commenced). (Id. ¶ 6(l)). The state court directed that the state sentences were concurrent with the federal sentence imposed on October 23, 2000. (Id. ¶6(m)). It appears that the state court had assumed erroneously that the federal government had primary custody over Petitioner and that he would immediately begin serving both his state and federal sentences at a federal correctional institution. However, because Petitioner actually was in the primary custody of the state, he was transported to the Michigan State Prison. See PS 5880.28, Chapt. 1 at Pages 12-13, 31-33; see also BOP Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05") at Pages 2-12.

Petitioner contended that he should have been sent to a federal correctional institution. To remedy what he believed was an error regarding the manner in which he was serving his state and federal sentences, Petitioner filed a grievance with the Michigan Department of Corrections. According to Petitioner, a state grievance officer contacted the United States Marshals Service on his behalf and was informed that Petitioner's placement was proper and that he should be released to the federal detainer after he served his state sentences. (See *Petition* at 5-6; see also Michigan Dept. of Corr. Prisoner Grievance Form, Ex. D to *Petition*).

Next, Petitioner filed with the state court a motion to set aside his state sentences. The state court granted that motion on February 28, 2001. (Pauley Decl. ¶ 6(n); 2/28/01 Orders, Ex. 2e to *Response*). On March 7, 2001, the state released Petitioner to the United States Marshals Service pursuant to the federal detainer. (Id. ¶ 6(o)). The BOP designated Petitioner to a federal correctional institution in South Carolina and later designated him to FCI McKean. (Id. ¶ 6(p)).

The state court's orders do not explain why its sentences were set aside, but Petitioner claims that the orders were issued so that Petitioner could be transferred to federal custody and

4

serve his sentences in accordance with the state court's original intent. (*Petition* at 6). If that is the case, the state court's orders had the desired effect, because by vacating Petitioner's sentences, the state released its primary custody thereby enabling him to be transferred to the custody of the federal government. See PS 5880.28, Chapt. 1 at Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12. As set forth below, the state court would later reinstate its sentences; however, by setting those sentences aside in February 2001, the state court was able to effectuate a process whereby Petitioner could serve his state sentences concurrent to his federal sentence at a federal institution.

On November 2002, the United States District Court for the Eastern District of Michigan granted a motion to reduce Petitioner's federal sentence from 151 to 139 months. (Pauley Decl. ¶ 6(q)-(r)). Then, on February 14, 2002, the state court re-sentenced Petitioner to three concurrent 5-20 year sentences for the state armed robbery convictions. The state court directed that Petitioner receive 995 days prior custody credit against his state sentences and that the state terms run concurrently with Petitioner's federal sentence. (Id. ¶ 6(s)-(t)). The 995 days of state prior custody credit is for all time served between May 25, 1999 (the date of his arrest) and February 13, 2002 (the date before his state sentences were deemed to have commenced). (See *Response* at 5 n.2; Michigan Dept. of Corr. Information Sheet, Ex. 2j to *Response*).

Once Petitioner was in the custody of the federal government for service of his federal sentence, the BOP computed his federal sentence under 18.U.S.C. § 3585, the statute that governs the calculation of a term of imprisonment. As explained in more detail below, the BOP has determined that Petitioner's federal sentence commenced on the date that it was imposed (October 23, 2000). It also determined that he is not entitled to any sentencing credit for the time he spent in official detention (in either state or federal custody) from May 26, 1999 (the date he was placed in custody on his state arrest) through October 22, 2000 (the day before his federal sentence was imposed and commenced). Petitioner contends that he is entitled that sentencing credit.

After Petitioner completed his administrative remedies, he filed the Petition for Writ of Habeas Corpus [Docket No. 4] with this Court. Therein, he asserts that the BOP must give him the additional sentencing credit. (See also *Traverse* [Docket No. 14]; *Objection To Respondent's Surreply* [Docket No. 20]).

**B.     Subject Matter Jurisdiction**

A challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255 and filed with the federal district court that convicted and sentenced the petitioner.  In cases such as this, where the petitioner is challenging the BOP's execution of his federal sentence, the habeas petition is properly brought under  28 U.S.C. § 2241.  See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990).  Section 2241 provides that a writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

**C.     Discussion**

In addressing any sentencing computation issue in federal habeas, a district court must consider: (1) when the federal sentence commenced; and, (2) the extent to which the petitioner may be entitled to credit for time spent in custody prior to commencement of the sentence.  18 U.S.C. § 3585.

**(1)     Calculation Of the Date Upon Which a Federal Sentence Commences**

The date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which states:

> **(a) Commencement of sentence.** – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

In this case, in order to determine the date upon which Petitioner's federal sentence commenced under § 3585(a), the BOP first had to decide whether it would exercise its authority under 18 U.S.C. § 3621(b) and designate the state facility where Petitioner had been serving his state sentences as "the official detention facility at which" he had been serving his federal sentence. See Barden, 921 F.2d at 479-84; see also PS.5160.05.  The BOP determined that it would make that designation.  (See 2/14/2008 Administrative Remedy Response, Ex. D to *Petition*).  The BOP's *nunc pro tunc* designation under § 3621(b) amounted to a retroactive concurrent federal sentence. Barden, 921 F.2d at 479-84; PS 5160.05 at Pages 5-7.

With the *nunc pro tunc* designation, the BOP was able to calculate Petitioner's federal

6

sentence as having commenced on the date the federal district court imposed it:  October 23, 2000.  See PS 5880.28, Chapt. 1 at Pages 13, 32A-33; PS 5160.05 at Pages 2-12.  That date is the *earliest possible date* that the BOP could have computed Petitioner's federal sentence as having commenced.  PS 5880.28, Chapt. 1 at Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed.").  Thus, Petitioner is receiving the maximum amount of sentencing credit available to him under § 3585(a).

To the extent that Petitioner argues that his federal sentence commenced on a date earlier than the date it was imposed, that argument is without merit.  Section 3585(a) provides that a sentence commences when an inmate is produced or received *for service of his federal sentence*.  Therefore, the BOP will not commence a sentence earlier than the date on which it is imposed.  Id.  See also, United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998) ("We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date.  Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]") (internal quotations and brackets omitted); DeMartino v. Thompson, No. 96-6322, 1997 WL 362260 at *2 (10th Cir. July 1, 1997) ("Logically, a [federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir.1980)).

**(2)     Petitioner Is Not Entitled To Prior Custody Credit**

Because the BOP commenced Petitioner's sentence on the earliest possible date, his request for time served in official detention prior to October 23, 2000 must be treated as a request for prior custody credit under 18 U.S.C. § 3585(b), which provides:

> (b)     Credit for prior custody. – **A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences** –

>  (1) as a result of the offense for which the sentence was imposed; or
>
>  (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
>  **That has not been credited against another sentence.**

18 U.S.C. § 3585(b) (emphasis added). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. United States v. Wilson, 503 U.S. 329, 337 (1992) (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001);[5] United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007).

In this case, all time Petitioner served in official detention from May 26, 1999 (the date he was jailed on his state arrest) until October 23, 2000 (the date his federal sentence commenced and he began receiving federal sentencing credit under § 3585(a)) was credited against the sentences imposed by State of Michigan. (Pauley Decl. ¶ 9). Therefore, the BOP was statutorily precluded from granting Petitioner with prior custody credit under § 3585(b) for any time he spent in official detention between those dates. Rios, 201 F.3d at 271-76; Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

### (3) Petitioner Is Not Entitled To Qualified Credit Against His Federal Sentence

Petitioner also raises an argument based on BOP policy that creates a limited exception to § 3585(b)'s rule against double credit in accordance with the decision Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993).[6] [*Traverse* ¶ 5].

---

[5] Rios was superseded by statute on unrelated grounds to the extent that the court applied a version of the United States Sentencing Guidelines § 5G1.3 prior to its amendment, effective November 1, 1995. See United States v. Saintville, 218 F.3d 246, 247 (3d Cir. 2000).

[6] By way of background, BOP policy provides that if a prisoner's federal and state sentences are concurrent, and the federal sentence is to run longer than the state sentence (not counting any credits), "[p]rior custody credits shall

(continued...)

Pursuant to Kayfez, the BOP will grant to a federal prisoner an amount of qualified double credit if the following conditions are present: (1) the non-federal and federal sentences are concurrent; (2) the raw effective full term ("EFT") date[7] of the non-federal term is later than the raw EFT of the federal term; and (3) the non-federal raw EFT, after application of qualified non-federal presentence time,[8] is reduced to a date that is earlier than the federal raw EFT date.  PS 5880.28, Chapt. 1 at Pages 22B-24; (see also Hazelton Decl. ¶¶ 6-9).

The BOP has determined that Petitioner does not qualify for Kayfez credit because he meets only the first two of the three prongs set forth above.  That is, his state EFT date, after application of qualified non-federal presentence time, is later than the federal raw EFT date.  (Hazelton Decl. ¶ 9).  James Hazelton, Correctional Programs Specialist, performed the Kayfez credit analysis and explains:

> I determined [Petitioner's] federal raw EFT date as May 22, 2012 (139 months after October 23, 2000), and I determined his non-federal raw EFT date to be February 13, 2022 (twenty years after February 14, 2002).  Also, from his records, I determined the date of his non-federal arrest was May 25, 1999.  The date his first sentence commenced was October 23, 2000.  The number of days between May 25, 1999 and October 22, 2000 (the day before the commencement of the first sentence), is 517 days.  Thus, his non-federal raw EFT date (February 13, 2022), adjusted by qualified presentence time (517 days), resulted in an adjusted non-federal date of September 14, 2020.  His federal raw EFT date is May 22, 2012 (139 months after October 23, 2000).  Therefore, because his adjusted non-federal EFT date

---

[6](...continued)
be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal."  PS 5880.28, Chapt. 1 at Page 22.  The BOP refers to these credits as "Willis time credits" after the decision that prompted the policy (Willis v. United States, 438 F.2d 923 (5th Cir. 1971)).  Id.  In Kayfez, the BOP had refused to credit against the petitioner's federal sentence the time he spent in state custody before receiving his first sentence (federal in that case) because that time already had been credited to his concurrent state sentence.  993 F.2d at 1289.  The BOP insisted that, because his state sentence was longer than his federal sentence, the period he sought credit for did not qualify as "Willis time."  Id. at 1290.  The Seventh Circuit Court concluded, however, that because the petitioner had been in presentence custody for 416 days, and his state sentence was longer than his federal sentence by only 358 days, the BOP had to give him 58-days of credit to his federal sentence in order to receive the full benefit of the 416-day credit he technically had received.  Id.

[7]  The Raw EFT is the full term date of a sentence without reference to prior custody credit or good conduct time.  It is determined by adding the length of the sentence imposed to the commencement date of the sentence.  PS 5880.28, Chapt. 1 at Page 14; (Hazelton Decl. ¶ 7).

[8]  Qualified non-federal presentence time is the number of days between the date of nonfederal arrest and the date the first sentence (whether federal or non-federal) commences.  See PS 5880.28, Chapt. 1 at Page 23; (Hazelton Decl. ¶ 8).

> (September 14, 2020), is later than his federal raw EFT date (May 22, 2012), he is not entitled to qualified presentence credit under Kayfez[.]

(Hazelton Decl. ¶ 9); see also PS 5880.28, Chapt. 1 at Page 23 (Example No. 10).

In conclusion, because his non-federal EFT date after adjusted by qualified non-federal presentence credit is later than his federal raw EFT date, Petitioner is not eligible for qualified credit under the BOP's Kayfez policy.

### D. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III. CONCLUSION

For the foregoing reasons, this Court denies the Petition for Writ of Habeas Corpus. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIHAD RASHID, | ) | |
|           Petitioner, | ) | C.A. No. 08-107 Erie |
| | ) | |
|      v. | ) | |
| | ) | Magistrate Judge Baxter |
| FRANCISCO J. QUINTANA, | ) | |
| Warden, FCI McKean, | ) | |
|           Respondent. | ) | |

## **ORDER**

AND NOW, this 8th day of October, 2009;

IT IS HEREBY ORDERED that the petition for writ of habeas corpus is denied. The Clerk of Courts is hereby directed to close this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge